IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| STEPHEN L. MARTIN AND | ) |
| JANEESE L. MARTIN, | ) |
| | ) Bankruptcy No. 16-01077 |
| Debtors. | ) |
| | ) |
| JANEESE L. MARTIN, | ) |
| | ) |
| Plaintiff, | ) Adversary No. 16-09052 |
| | ) |
| v. | ) |
| | ) |
| GREAT LAKES HIGHER EDUC. GROUP, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ) |
| | ) |
| Intervenor. | ) |

**RULING ON DISCHARGEABILITY OF STUDENT LOAN**

This matter came before the Court for trial in Sioux City, Iowa. Wil Forker appeared for Debtor Janeese Martin ("Debtor"). Brooke Van Vliet appeared for Intervenor-Defendant, Educational Credit Management Corporation ("ECMC"). The parties submitted post-trial briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor owes over $230,000 in student loan debt, mostly from compounding interest. She obtained student loans, with an original principal balance of around $48,000, while earning an undergraduate degree, a Juris Doctorate degree, and a Master's degree, all from the University of South Dakota. Debtor argues that she has been unable to obtain steady gainful employment and is therefore unable to repay her loan without undue hardship. Debtor argues that allowing her loan to continue to grow puts a mental and emotional burden on her and her family.

ECMC argues that Debtor's unemployment is largely voluntary and that her educational background qualifies her for well-paying jobs. ECMC also argues that discharge is unnecessary because Debtor is eligible for an income-based repayment plan that requires payments of $0 per month unless and until she obtains gainful employment.

For the reasons that follow, the Court finds that not discharging Debtor's student loan would cause an undue hardship. Debtor's student loan is dischargeable under 11 U.S.C. § 523(a)(8).

## STATEMENT OF THE FACTS

Debtor is 50 years old. She currently lives in Vermillion, South Dakota with her husband, who is 66, and their two daughters, who are 23 and 21. Debtor is currently unemployed.

Debtor received a bachelor's degree in criminal justice and political science from the University of South Dakota in 1989. She went on to obtain a Juris Doctorate ("J.D.") in 1991 and a Master of Public Administration in 1993, both from the University of South Dakota. Debtor passed the South Dakota bar in 1992.

After finishing her final degree in 1993, Debtor consolidated all her educational loans with Great Lakes Higher Education Guaranty Corporation. At the time of consolidation her loan balance was approximately $48,817. Her consolidated loan has an interest rate of 9%. Debtor's student loan was later assigned to ECMC. As of the date of trial, Debtor's outstanding student loan balance, including principal and accrued interest, was over $230,000.

Shortly before graduating from her Master's program, Debtor was hired as an attorney at East River Legal Services in Sioux Falls, South Dakota. Debtor provided free legal services to qualified individuals. Debtor was laid off from East River due to budget cuts in December of 1995, after roughly three years of work.

Debtor had her first child shortly after being laid off and was unable to seek employment for several months. In early 1996, Debtor's husband got a job in Nebraska and the family moved. Debtor applied to transfer her law license to Nebraska. She was admitted to the Nebraska bar in September of 1996. Debtor sought but was unable to find any legal work in Nebraska. Debtor's husband eventually lost his job in Nebraska and the family returned to South Dakota. After

not being able to obtain a full-time job in South Dakota for six months, Debtor accepted a part-time position as an English as a second language (ESL) instructor in Sioux City, Iowa.

Debtor worked as an ELS instructor until December of 2000, when she obtained a full-time position with the Taxpayer's Research Council, a non-profit organization in Sioux City. Debtor's salary was approximately $30,000 per year when she started with the Taxpayer's Research Council and $31,000 when her employment ended. Debtor worked in this capacity until November of 2008, when Debtor decided to try to find work closer to her home and family in Dell Rapids, South Dakota. The Taxpayer's Research Council, upon learning of Debtor's intention to move, forced Debtor to set an immediate end date for her employment. Debtor would have liked to continue with the Taxpayer's Research Council until she found other work near Dell Rapids. Due in part to the tight job market after the 2008 financial crises, Debtor was unable to find any work after her position with the Taxpayer's Research Council ended.

Debtor looked for employment more or less continuously after her job with the Taxpayer's Research Council ended. She has applied for hundreds of jobs, law and non-law related, in and around Sioux Falls, South Dakota and Sioux City, Iowa. In the nine years since her last job, Debtor has received only a few

interviews and no offers of employment. Debtor very much wants to work and support herself and her family.

Debtor consistently made payments on her student loan of $410 per month from 1994–1996 while she was employed with East River Legal Services. After she was laid off in 1996, Debtor applied for various deferments. She started making payments again when she was hired at the Taxpayer's Research Council in 2000. Debtor applied for additional deferments at times when she or her husband were unemployed. Debtor used up all available deferments. Eventually she was no longer able to make payments and her loan went into default. According to her loan payment history from 1994–2008, Debtor paid a total of $30,077.76 into her student loan, of which $26,040.78 went to interest and $3,960.30 went to principal.

A majority of Debtor's time is and has been taken up caring for her two adult children. Debtor's daughters are both students at the University of South Dakota, but they both live at home with Debtor and her husband. One of Debtor's daughters suffers from obsessive-compulsive disorder. The other daughter has a learning disability. Debtor frequently cooks and cleans for her children, drives them back and forth between home and their classes, and helps them generally manage their lives.

Debtor and her family depend entirely on Debtor's husband's income. Debtor's husband works as a maintenance person and dishwasher at Café Brulé in

Vermillion, South Dakota. Debtor's husband also receives a pension from the State of South Dakota and Social Security payments. In 2016, Debtor's husband made $39,243 total from all sources before taxes. This amount supports Debtor, Debtor's husband, and Debtor's adult children living with them, who also have financial aid and student loans of their own.

## CONCLUSIONS OF LAW AND ANALYSIS

Before proceeding to the central issue in this case, the dischargeability of Debtor's student loan, the Court must address the availability of partial discharge.

### I.    Partial Discharge

During trial, the Court requested additional briefing on whether it has the authority to discharge only a portion of Debtor's student loan debt or some, but not all, of the individual loans. In its post-trial brief, ECMC consented to the Court discharging all but $90,000 of the Debtor's outstanding student loan debt. ECMC's Post-Trial Brief at 13, Martin v. Great Lakes Higher Educ. Group, No. 16-09052 (Bankr. N.D. Iowa Nov. 28, 2017). In its brief, ECMC also admitted that requiring Debtor to pay back any more than $90,000 would create an undue hardship. Id. While ECMC's efforts at striking a compromise are commendable, the Court does not have the authority to partially discharge student loan debt.

Some Circuits have allowed partial discharge under § 523(a)(8). Carnduff v. U.S. Dept. of Educ. (In re Carnduff), 367 B.R. 120, 130 (B.A.P. 9th Cir. 2007)

6

("The Ninth Circuit has rejected the view that Section 523(a)(8) mandates an 'all-or-nothing' approach to nondischargeability of student loan debt."); see also Hagen v. Avangel Coll., Inc. (In re Hagen), 36 B.R. 578, 579 (Bankr. M.D. Fla. 1983); Kuhns v. Pa. Higher Educ. Assistance Agency (In re Kuhns), 33 B.R. 759, 762– 63 (Bankr. S.D. Ohio 1983).

Interpreting § 523(a)(8) to allow partial discharge is arguably the more equitable approach. See Thad Collins, Note, Forging Middle Ground: Revision of Student Loan Debts in Bankruptcy as an Impetus to Amend 11 U.S.C. § 523(a)(8), 75 Iowa L. Rev. 733, 753–57 (1990). But there is little support for the proposition that Congress intended § 523(a)(8) to allow for partial discharge. Id. at 757–63.

The Eighth Circuit has plainly rejected partial discharge, instead adhering to the all-or-nothing approach. Conway v. Nat'l Collegiate Tr. (In re Conway), 495 B.R. 416, 423 (B.A.P. 8th Cir. 2013) ("[T]here is no case law in this circuit that would authorize the court to 'partially discharge' a student loan."). In taking this position, the Eighth Circuit Bankruptcy Appellate Panel reaffirmed the Bankruptcy Court for the Northern District of Iowa's earlier decisions rejecting partial discharge. Hawkins v. Buena Vista Coll. (In re Hawkins), 187 B.R. 294, 300 (Bankr. N.D. Iowa 1995) ("The court's authority under § 523 is to determine dischargeability. This is an all-or-nothing proposition."); Faktor v. United States (In re Faktor), 306 B.R. 256, 262–63 (Bankr. N.D. Iowa 2004) ("The court does

7

not have the authority to modify the payment terms of a student loan or to discharge a partial amount of principal or accrued interest.").

The Eight Circuit is an all-or-nothing jurisdiction. While parties can negotiate the terms of repayment, the Court cannot unilaterally renegotiate the terms or amount of a debtor's student loan. The Court's role is to determine whether the student loan in question is dischargeable under 11 U.S.C. § 523.

While the Court does not have the authority to partially discharge student loan debt, or renegotiate the terms of a debtor's student loan repayment, the Court is not required to view the debtor's student loan obligation as one lump sum. The Court must determine whether each loan, separately, imposes an undue hardship and may discharge some loans while declining to discharge others. Conway, 495 B.R. at 423 ("'[A]pplication of § 523(a)(8) to each of . . . the loans separately was not only allowed, it was required.'") (quoting Andresen v. Neb. Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 137 (B.A.P. 8th Cir. 1999)).

Debtor consolidated her student loans with Great Lakes Higher Education Guaranty Corporation in 1993. In its trial brief, ECMC specifically refers to Debtor's loan as "one loan with two subparts." ECMC's Trial Brief at 2, Martin v. Great Lakes Higher Educ. Group, No. 16-09052 (Bankr. N.D. Iowa Nov. 28, 2017). Neither party has presented evidence that Debtor holds multiple loans.

Therefore, the Court shall consider if Debtor's single loan, in its entirety, imposes an undue hardship upon her and her dependents.

## II. Dischargeability of Debtor's Student Loan

Having determined that the Eighth Circuit is an "all-or-nothing" jurisdiction, the Court must determine whether discharging Debtor's full student loan obligation is warranted in this case.

The Bankruptcy Code provides that a discharge under § 727 does not discharge student loan debt "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8) (2012). By excepting student loans from discharge, "Congress intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligation from doing so." Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003).

Congress included the undue hardship provision to ensure that debtors who truly needed relief could still get it through bankruptcy. Id. The Bankruptcy Code does not define "undue hardship," so the courts have had to devise their own tests. Conway, 495 B.R. at 419.

A majority of circuits use what is known as the Brunner test. Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987). The Brunner test requires a debtor to show that repayment of her student loans would

9

force her and her dependents below a "'minimal standard' of living." Long, 322 F.3d at 554 (citing and quoting Brunner).

The Eighth Circuit applies the more flexible "totality of the circumstances" test. Conway, 495 B.R. at 419. This test was first adopted in Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981). It is sometimes referred to as the Andrews test. Fern v. FedLoan Servicing (In re Fern), 553 B.R. 362, 367 (Bankr. N.D. Iowa 2016), aff'd, 563 B.R. 1 (B.A.P. 8th Cir. 2017).

The "totality of the circumstances" test requires the Court to examine the debtor's undue hardship arguments "on the unique facts and circumstances that surround the particular bankruptcy." Long, 322 F.3d at 554. In considering the facts of a particular case, the Court must focus on three factors: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) the debtor's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances." Id. The debtor must prove, by a preponderance of the evidence, that excepting her student loans from discharge would impose an undue hardship. Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 779 (8th Cir. 2009). The Court will consider each of these three factors.

### A. Debtor's Past, Present, and Reasonably Reliable Future Financial Resources

The first factor the Court considers under the "totality of the circumstances" test is Debtor's past, present, and reasonably reliable future financial resources. Long, 322 F.3d at 554. Despite her advanced education, Debtor has been unsuccessful in obtaining gainful employment since November of 2008. This is not for lack of trying. Debtor testified she has applied for jobs continuously, both legal and non-legal, over the years. Debtor's lack of work experience and large gaps in employment make it unlikely that she will ever obtain and sustain employment for a period of time, and at a sufficient salary, to make any substantial payments on or reduction in her student loan balance.

ECMC asserts that, because of Debtor's educational qualifications, she should be able to obtain a job with a sufficient salary. ECMC notes that Debtor has not presented evidence of any physical or mental disability that prevents her from working. ECMC argues that Debtor has chosen to remain unemployed in order to care for her two adult children and that her job search has been half-hearted. The Court rejects ECMC's arguments as they are not consistent with the evidence at trial.

Debtor does hold two advanced degrees, a J.D. and a Masters of Public Administration. After finishing her master's degree, Debtor did practice law for three years with East River Legal Services. Debtor was unemployed, however, for

11

approximately the next five years, until she was hired by the Taxpayer's Research Council in 2000. She worked there for eight years. Debtor has been unemployed since November of 2008. Debtor testified very credibly that she wants to work and has applied to hundreds of jobs. She has not received any offers and has been very discouraged by her lack of success.

Debtor's advanced degrees must be weighed against the age of those degrees and Debtor's lack of recent work experience. Debtor is currently 50 years old and has three years of legal work experience. Both her J.D. and her legal work experience are over 20 years old. For any legal job Debtor may qualify for, the vast majority of candidates will have more recent education or work experience. Debtor's experience at Taxpayer's Research Council adds another skillset to her resume, but it is in a narrow field with very limited opportunities in the area where she lives. While it is possible that Debtor will find employment with sufficient income, Debtor's inability to do so over ten years, while making substantial effort, makes it unlikely she will find such employment. It is even more unlikely that Debtor will find a job with sufficient enough income to make significant payments on her student loan.

Debtor and her family currently rely entirely on Debtor's husband's limited income to live. In 2016, Debtor's husband made $39,243 before taxes from his café job, social security, and his pension. While his income allows the family to

meet its most basic needs, it does not provide any excess for Debtor to pay toward her student loan. His income is also not guaranteed in the future. He is currently 66 years old. Even if Debtor does manage to find employment, she could soon be the only income earner in the household when her husband's age prevents him from continuing to work.

The Court finds that Debtor's age and experience make it unlikely she will obtain employment sufficient to make payments on her student loan. The Court also finds that Debtor cannot reasonably rely on her husband to continue earning at even the current modest level for a time sufficient to make substantial payments on her student loan even if she does find work. Debtor's past, present, and reasonably reliable future financial resources weigh in favor of discharge.

### B. Debtor's Reasonable and Necessary Living Expenses

The second factor the Court considers under the "totality of the circumstances" test is whether Debtor's expenses are reasonable and necessary. Long, 322 F.3d at 554. A debtor must be allowed a minimal standard of living, but if a debtor has unreasonable or unnecessary expenses, this weighs against discharge of student loan debt. Abney v. U.S. Dept. of Educ. (In re Abney), 540 B.R. 681, 686 (Bankr. W.D. Mo. 2015). "A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." Id. (internal quotation marks omitted).

Debtor's bankruptcy petition shows the following monthly expenses:

Rent $900.00
Electricity/Heat $236.71
Water/Sewer $124.01
Telephone $20.00
Food/housekeeping supplies $1,300.00
Clothing/laundry $150.00
Personal care products $150.00
Medical/dental $50.00
Transportation $150.00
Entertainment $40.00
Life insurance $18.00
Health insurance $137.40
Vehicle insurance $143.26
Car license $32.00

Debtor's total monthly expenses are $3,467.88. Debtor's monthly household income, which comes entirely from her husband, is $3,306.68. This means that Debtor's family lives at a monthly deficit of $161.20. At trial Debtor testified that, since filing her bankruptcy schedules, their rent has gone up by $200 per month and they have an additional car payment. ECMC does not argue that Debtor's expenses are unreasonable or unnecessary.

The Court finds that the majority of Debtor's spending goes toward food, shelter, clothing, medical treatment, and other expenses reasonably necessary to maintain a minimal standard of living. Abney, 540 B.R. at 686. The Court does not find any of Debtor's expenses to be unreasonable or unnecessary. Debtor's living expenses weigh in favor of discharge.

### C. Other Relevant Facts and Circumstances

The third and final factor in the "totality of the circumstances" test asks the Court to consider any other relevant facts and circumstances surrounding the particular bankruptcy case. Long, 322 F.3d at 554. The primary issue raised by ECMC under this factor is whether or not discharge is necessary in light of available income-based repayment plans ("IBRPs").

ECMC argues that discharge is unnecessary because under an IBRP Debtor's current payment would be $0 per month. Her payments would increase only if her monthly income increases to a level allowing her to make payments in the future. Additionally, under an IBRP, no matter how much of the student loan Debtor paid, the entire loan would be canceled in 20 to 25 years, depending on which plan Debtor chooses.

The Court recently addressed this issue in Fern v. FedLoan Servicing (In re Fern), 553 B.R. 362, 369–71 (Bankr. N.D. Iowa 2016), aff'd, 563 B.R. 1 (B.A.P. 8th Cir. 2017). The Court held that "[e]ligibility for income-based repayment plans is 'one factor in [the totality of the circumstances] analysis.'" Fern, 553 B.R. at 369 (quoting Nielsen v. ACS, Inc. (In re Nielsen), 502 F. App'x 634, 635 (8th Cir. 2013)). "When considering income-based repayment plans under § 523(a)(8), the Court must 'be mindful of both the likelihood of a debtor making significant payment under the [income-based repayment plan], and also of the additional

15

hardships which may be imposed by these programs.'" Fern, 553 B.R. at 369 (quoting Abney, 540 B.R. at 689). The Court went on to explain that "additional hardships" include the likely growth of the debt over the course of the IBRP, the effect of the debt on the debtor's ability to obtain credit in the future, the mental and emotional impact on the debtor of allowing debt to continue to mount, and the likely tax consequences to the debtor when the debt is ultimately canceled. Fern, 553 B.R. at 369.

Debtor currently has over $230,000 in student loan debt at an interest rate of 9%. If Debtor does manage to find employment and has enough income to start paying down her student loan, her debt is likely to grow at a rate faster than she can pay it down. Even if Debtor manages to find gainful employment with a salary comparable to what she was making in her previous two positions, her debt is likely to keep growing, not decreasing. She points out that this will likely hurt her credit and continue to cause her mental and emotional hardship.

The tax consequences of Debtor entering an IBRP are likely to be severe. Debt discharged in bankruptcy is not taxable, but debt canceled at the end of a 20 to 25 year IBRP is considered taxable income. Fern, 553 B.R. at 370 (citing Abney, 540 B.R. at 689–90). At the end of the IBRP period, Debtor would have to pay taxes on the cancelled debt to the extent that she is then solvent. Id.

16

The debtor in Fern was 35 years old. Fern, 553 B.R. at 364. The Court noted that when the debt was ultimately canceled at the end of the 20 to 25 year IBRP, the debtor would be either 55 or 60. Id. at 370–71. The Court expressed concern that the tax bill associated with this cancelation would wipe out any assets the debtor had managed to acquire right as she was approaching retirement. Id.

Debtor in this case is 50. If she were to sign up for an IBRP, she would be 70 or 75 when her debt was ultimately canceled. The tax liability could wipe out all of Debtor's assets not as she is approaching retirement, but as she is in the midst of it. If Debtor enters an IBRP, not only would she have the stress of her debt continuing to grow, but she would have to live with the knowledge that any assets she manages to save could very well be wiped out when she is in her 70s.

The Court must weigh these hardships against the probability that Debtor will make substantial payments on her student loan under an IBRP. Fern, 553 B.R. at 371. ECMC argues that Debtor's education makes it likely she will be able to obtain gainful employment and begin paying down her student loan. For all the reasons discussed under the first factor above, the Court finds it unlikely that Debtor will be able to obtain such gainful employment.

ECMC also argues that if Debtor does manage to find employment, she will be able to devote a large amount of her income to repaying her student loan because her husband's income currently covers their expenses. Debtor's husband

17

is 66 years old and provides a minimal income beyond retirement funds. Debtor's husband likely will not be able to continue covering the family's expenses indefinitely. In fact, he is not even able to fully cover them now.

Given Debtor's struggles to find employment, her limited number of remaining working years, and her husband's likely inability to continue supporting the family at his current rate, it is unlikely that Debtor will ever be able to make substantial payments on her student loan under an IBRP. Comparing the hardships of allowing Debtor's student loan to continue to grow against the likelihood that she will make substantial payments, the Court finds that the availability of income-based repayment plans does not ameliorate the undue hardship Debtor established under the first two factors of the "totality of the circumstances" test.

Finally, the Court notes that Debtor has made good faith efforts to repay her loan. She made payments when she was able, and she applied for deferments when she was not, until those deferments ran out. Though this is not a controlling factor in this circuit, the Court finds that Debtor's good faith efforts to repay her student loan weigh in favor of discharge.

After considering Debtor's past, present, and reasonably reliable future financial resources; Debtor's reasonable and necessary living expenses; and other relevant facts and circumstances, the Court finds that Debtor is entitled to discharge of all of her outstanding student loan debt under 11 U.S.C. § 523(a)(8).

18

## CONCLUSION

**WHEREFORE**, Debtor's Complaint to Determine Dischargeability of Educational Loan is GRANTED.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:

February 16, 2018

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE